IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : CASE NO: 1:23-CR-00160-ELR-CMS |
| v. | : |
| | : |
| EFRAIN GONZALEZ and | : |
| ESTELLA GONZALEZ, | : |
| | : |
| Defendant. | : |

**DEFENDANTS' AMENDED JOINT MOTION TO DEPOSE WITNESSES**

Pursuant to Rule 15 of the Federal Rules of Criminal Procedure, Defendants Efrain and Estella Gonzalez hereby file this Amended Joint Motion to Depose Witnesses and respectfully request that the District Court allow the Defendants to take depositions of certain material witnesses who likely will not be available to testify at trial. The Defendants further request that the Court order the Government to produce the Defendants so they may be present for these depositions and that the Government cover the costs of preserving the deposition testimony for use at trial.

The Defendants jointly amend their previously-filed Motion to identify additional material witnesses who can provide exculpatory testimony.

**STATEMENT OF FACTS**

On May 9, 2023, the Government filed an indictment charging Mr. and Mrs. Gonzalez with several counts of forced labor and alien smuggling. The indictment alleges that Mr. Gonzalez and Mrs. Gonzalez facilitated the illegal entry of several

1

undocumented workers for their Mexican restaurants in Fayetteville and Fairburn, Sabor a Mexico ("Sabor"), and that they fraudulently obtained visas for their other employees by misrepresenting their prospective wages and job titles when applying for their visas. The Government further alleges that the Defendants abused and exploited their employees by forcing them to live and work under poor conditions and threatened them with deportation and other means of retaliation.

The limited discovery produced by the Government to date consists of the case agent's search warrant application and summaries of interviews with the alleged victims and other Government witnesses. These materials reflect that this investigation began when one of the alleged victims was fired from Sabor and, together with another alleged victim, subsequently called a human trafficking "hotline" to allege that the Defendants were engaged in labor exploitation. All of the allegations against the Defendants in the indictment are being made by a group of former Sabor employees who came to the U.S. together in late 2021 on visas. Many of these former employees met the Defendants while working at a resort in Mexico called the Fives, and several of them worked together after leaving Sabor.

Critically, it is our understanding that all of the alleged victims and other Government witnesses have been granted "continued presence" status as a result of their participation in this case, meaning they will not be deported or subject to immigration removal proceedings while this case is pending. It is also our

2

understanding that some or all of them have received work permits, driver's licenses, and other benefits from the Government in connection with this case.

In late 2022 or early 2023, the Defendants were made aware of the Government's investigation in this case after several of their current and former employees informed them that several of the alleged victims were attempting to recruit Sabor employees to make similar allegations against the Defendants. To entice them, the alleged victims told these employees that they were receiving benefits in exchange for their cooperation with the Government's investigation, including the ability to stay and work in the U.S. One of the alleged victims even sent a picture of his work permit to one of the employees to prove it. On other occasions, some of the alleged victims contacted Sabor employees and discussed the Defendants, the Sabor restaurants, and the investigation.

Many of the employees who were contacted by the alleged victims and other Government witnesses are here on visas, which are set to expire soon. Defendants seek to depose only the employees who will soon have to return to Mexico when their visas expire and thus will not be available to testify at trial.

Counsel has discussed the need for these witnesses to testify at trial with Counsel for the Government, and the Government has indicated it will consider granting these witnesses "deferred action" or "parole" to ensure their availability at trial. Given that the witnesses' visas are set to expire within a month, however, and

the possibility that they are not granted legal status to remain in the U.S., the Court should allow the Defendants to depose the witnesses and preserve their testimony.

**PROPOSED DEPONENTS**

The Defendants specifically seek to depose current employees of Sabor a Mexico who are in the U.S. pursuant to a work visa. Their visas are set to expire either around late June/early July and in August, and, as the Defendants have been detained pending trial, they are unable to operate their restaurant and unable to apply to extend their visas. Accordingly, once their visas expire, the following witnesses will have to return to Mexico or be deported:

1. Fernando Elisain Lopez, whose visa is expected to expire in August;
2. Hugo Carrillo, whose visa is expected to expire in late June/early July;
3. Agustin Cruz, whose visa is expected to expire in August;
4. Ancelmo Gabriel, whose visa is expected to expire in August;
5. Reyna Mireya, whose visa is expected to expire in late June/early July;
6. Alexander Guerrero, whose visa is expected to expire in late June/early July;
7. Jairo Valdez, whose visa is expected to expire in late June/early July;
8. Hilda Loza, whose visa is expected to expire in August;
9. Gilberto Santamaria, whose visa is expected to expire in August; and
10. Joel Altunar, whose visa is expected to expire in August.

11. Alessandro Martinez, whose visa is expected to expire in late June/early July;

12. Yadira Mercedes, whose visa is expected to expire in late June/early July;

13. Eder Lazaro Pintor, whose visa is expected to expire in late June/early July;

14. Irving Alexis Molina Alvarez, whose visa is expected to expire in late June/early July;

15. Jose Luis Pineda, whose visa is expected to expire in late June/early July;

16. Jose Luis Leyva, whose visa is expected to expire in late June/early July;

As summarized above, these witnesses have either had direct contact with the alleged victims and other Government witnesses regarding the Government's investigation, or they can otherwise undermine the Government's allegations regarding how the Defendants operated Sabor and treated their employees.

For example, Witnesses #1 and #2 know the alleged victims intimately, having worked with them at the same resort in Mexico and arriving in the U.S. to work for Sabor at the same time. They worked in the same conditions and lived in the same conditions as the alleged victims. As such, their deposition testimony will likely undermine the Government's allegations. They will likely also provide evidence that the Government's witnesses fabricated the allegations against the Defendants to gain immigration benefits and used those benefits in attempt to recruit others to corroborate their false allegations against the Defendants.

Witnesses #3 and #4 also had direct contact with some of the alleged victims and Government witnesses regarding the investigation and can provide testimony that undermines the Government's allegations. For example, they can testify that they were contacted by one of the alleged victims regarding the investigation and shown a work permit he was able to obtain as a result of his cooperation. Witnesses #14 and #16 worked with the alleged victims and/or other government witnesses and can contradict their allegations regarding how they were treated while employed at Sabor.

The rest of the witnesses can, at a minimum, provide testimony contradicting the Government's allegations regarding working conditions at Sabor and living conditions for employees who rented their residences from the Defendants. Of course, discovery has not been produced, and defense investigation is ongoing. Accordingly, Counsel anticipates these proposed deponents will be able to testify regarding additional facts that are material, if not exculpatory.

## **ARGUMENT AND CITATIONS TO AUTHORITY**

It is well-established that a defendant's right to due process can be violated "when the Government exercises its sovereign powers so as to hamper a criminal defendant's preparation for trial." *California v. Trombetta*, 467 U.S. 479, 486 (1984) (punctuation omitted). Under certain circumstances, deporting an alien witness violates a defendant's Fifth and Sixth Amendment rights "if there is a

reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 873-74 (1982); *see also United States v. Hudson*, 265 F. Supp. 2d 1299, 1305 (M.D. Fla. 2003), dismissing indictment where deportation of witnesses with favorable testimony to the defense was "inherently unfair."[1]

The Government has informed defense counsel that it will attempt to secure "deferred action" for these witnesses or otherwise work to ensure that these witnesses are available for trial. It is our understanding that the witnesses are willing to remain in the U.S. after their visas expire only if the Government allows them to. In the event the Government cannot secure deferred action or other legal status for these witnesses, however, this Court should grant this motion to allow the Defendants to depose these witnesses and preserve their testimony.

Pursuant to Rule 15 of the Federal Rules of Criminal Procedure, "A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice."

---

[1] *See also* 8 C.F.R. §§ 215.2 and 215.3, prohibiting departure of alien as "prejudicial to the interests of the United States" where the alien "is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court in the United States."

7

The Eleventh Circuit has held that, "ordinarily, exceptional circumstances exist within the meaning of Rule 15(a) when the prospective deponent is unavailable for trial and the absence of his or her testimony would result in an injustice. The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case. When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony—by deposing the witness—absent significant countervailing factors which would render the taking of the deposition unjust." *United States v. Drogoul*, 1 F.3d 1546, 1552-54 (11th Cir. 1993); *see also United States v. Ramos*, 45 F.3d 1519, 1522-23 (11th Cir. 1995), "three factors guide the exceptional circumstances analysis: whether (1) the witness is *unavailable* to testify at trial; (2) injustice will result because testimony *material* to the movant's case will be absent; and (3) *countervailing factors* render taking the deposition unjust to the to the nonmoving party." (Emphasis in original).

Here, the Court should allow the Defendants to depose the witnesses identified above because: 1) they will be unavailable for trial through no fault of the Defendants; 2) they have exculpatory testimony to provide, the absence of which would result in a grave injustice at trial; and 3) there are no countervailing factors that would render taking the depositions unjust to the Government.

First, as articulated in *Drogoul*, a potential witness is "unavailable" under Rule 15 "whenever <u>a substantial likelihood</u> exists that the proposed deponent will not testify at trial. In that situation, justice usually will be served by allowing the moving party to take the deposition, thereby preserving the party's ability to utilize the testimony at trial, if necessary." *Drogoul*, at 1553 (emphasis added). The Court further held that, "[s]ignificantly, that showing need not be conclusive before a deposition can be taken."

The Eleventh Circuit has found a substantial likelihood of unavailability in cases where the proposed deponents are "foreign nationals located outside the United States" and thus "beyond the subpoena power of the district court." *Id*; *see also Ramos*, 45 F.3d at 1523. More relevant to this case, courts have also found a substantial likelihood of unavailability where witnesses are in the U.S. but facing likely deportation or removal before trial. *See United States v. O'Sullivan*, 553 F.2d 1349, 1352-53 (M.D. Fla. 2008), granting motion to depose witness who faced likely deportation and finding it would be "improper" to deny the defense "the opportunity to depose…a witness Defendant classifies as 'essential.'"

Second, the testimony these witnesses can provide is clearly material. In fact, it is exculpatory, both undermining the Government's allegations regarding the Defendants and how they treated their employees and providing direct evidence that the alleged victims and others in this case had a strong motive to fabricate the

9

allegations against the Defendants in order to stay in the U.S. rather than face deportation. *See United States v. Cortes-Meza*, 2012 U.S. Dist. LEXIS 198144, at *2 (N.D. Ga. 2012), proposed deponent's testimony was material to showing that the alleged victims "purposely colluded to obtain legal residency in the States."

Finally, there are no countervailing factors that would render these depositions, and their potential admission at trial, unjust to the Government. As proposed, these depositions would take place in the U.S., thus avoiding the need to conduct foreign depositions, which are disfavored. The Government appears to recognize the importance of these witnesses' testimony, as reflected in their willingness to attempt to secure their appearance for trial. However, as discussed below, the Government cannot guarantee their appearance at trial at this point. Therefore, at a minimum, justice demands that the Defendants be allowed to secure and preserve the trial testimony of these witnesses through depositions.

An unpublished opinion by the Eleventh Circuit, *United States v. Smith*, 213 Fed. Appx. 774 (11th Cir. 2006), is instructive in this case. In *Smith*, the Eleventh Circuit affirmed the district court's ruling allowing the Government to depose witnesses and admit their deposition testimony at trial where the witnesses were deported prior to trial. *Id*. at 776. The Court found the Government was not at fault for the unavailability of the witnesses since they had made a good faith, but unsuccessful, effort "to secure DHS's agreement to parole [the witness] pending

trial." *Smith*, at 777, *citing United States v. Rivera*, 859 F.2d 1204, 1207 (4th Cir. 1988), upholding admission at trial of a deposition of non-citizen witness who left the country before trial under threat of deportation.

As in *Smith*, absent the Government granting these witnesses legal status or other protection from deportation or removal, the proposed deponents in this case are slated to depart the U.S. upon the expiration of their visas and will be unavailable for trial through no fault of the Defendants. *See Cortes-Meza*, 2012 U.S. Dist. LEXIS 198144, at *2, where the Government "agreed to arrange immigration paperwork to assure [the witness] would be able to testify…"

Just as it was necessary to allow the Government to conduct depositions and introduce testimony from those depositions in *Smith*, allowing Mr. and Mrs. Gonzalez to conduct depositions is proper and warranted in this case. The proposed deponents can offer material, exculpatory testimony that undermines the Government's allegations and is key to the credibility, or lack thereof, of the alleged victims and other Government witnesses. To deprive the defense of this testimony, under these circumstances, would result in a miscarriage of justice.

Defendants also request that the Court order the Government to produce the Defendants for the purposes of attending these depositions. It is well-established that defendants have a constitutional right to confront their witnesses and be present for the testimony of their own witnesses. That right is codified under Rule

15, which states that, subject to certain exceptions, "the officer who has custody of the defendant must produce the defendant at the deposition and keep the defendant in the witness's presence during the examination."

Finally, Defendants respectfully request that the Court order the Government to cover the costs preserving the deposition testimony for trial, including the cost of recording the depositions and retaining an interpreter and court reporter, just as the Government would cover these costs during a jury trial. In fact, Rule 15 requires that the Court order the Government to pay expenses relating to the depositions, including the cost of any transcripts, if the defendant is unable to bear cost of the expenses.[2] In fact, the Defendants are unable to bear these costs, especially given the truncated timeframe, as their ability to access and manage their assets has been significantly impaired by their detention pending trial.

## **CONCLUSION**

For these reasons, we respectfully request that the Court grant this motion and allow the Defendants to conduct depositions of the above-identified witnesses prior to their imminent departure from the U.S. We further request that the Government produce the Defendants so they may be present for these depositions

---

[2] Because the proposed depositions would take place in Atlanta, Georgia, where counsel for the Defendants both reside, the parties are not requesting that the Court order the Government to pay travel and "subsistence expenses" to attend the deposition, as provided by Rule 15.

12

and that the Government cover the costs of a court reporter for these depositions and the audio-video recordings of these depositions for potential use at trial.

This 16th day of June, 2023.

| | |
|---|---|
| THE CHURCH LAW FIRM, LLC | JESS JOHNSON LAW, LLC |
| /s/ Thomas D. Church | /s/ Jess B. Johnson |
| Thomas D. Church | Jess B. Johnson |
| Georgia Bar No.: 956589 | Georgia Bar No. 322066 |
| 1875 Old Alabama Road | 1180 W Peachtree Street NW |
| Suite 760 | Suite 2075 |
| Roswell, Georgia 30076 | Atlanta, Georgia 30309 |
| (404) 223-3310 | (404) 885-1325 |
| tom@church.law | jess@jessjohnsonlaw.com |
| Attorney for Efrain Gonzalez | Attorney for Estella Gonzalez |

# CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system which will automatically send email notifications of such filing to all counsel of record in this matter.

This 16th day of June, 2023.

| | |
|---|---|
| THE CHURCH LAW FIRM, LLC | JESS JOHNSON LAW, LLC |
| /s/ Thomas D. Church<br>Thomas D. Church<br>Georgia Bar No.: 956589<br>1875 Old Alabama Road<br>Suite 760<br>Roswell, Georgia 30076<br>(404) 223-3310<br>tom@church.law | /s/ Jess B. Johnson<br>Jess B. Johnson<br>Georgia Bar No. 322066<br>1180 W Peachtree Street NW<br>Suite 2075<br>Atlanta, Georgia 30309<br>(404) 885-1325<br>jess@jessjohnsonlaw.com |
| Attorney for Efrain Gonzalez | Attorney for Estella Gonzalez |